N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                       |     |                                              |
|---------------------------------------|-----|----------------------------------------------|
| MARK ZAID                             | :   |                                              |
|                                       | :   |                                              |
| v.                                    | :   | Civil Action No. DKC 21-1130                 |
|                                       |     | (Consol. Civil Action No. DKC 21-2625)       |
|                                       | :   |                                              |
| DEPARTMENT OF JUSTICE                 | :   |                                              |
|                                       | :   |                                              |

* * *

|                                       |     |                                              |
|---------------------------------------|-----|----------------------------------------------|
| MARK ZAID                             | :   |                                              |
|                                       | :   |                                              |
| v.                                    | :   | Civil Action No. DKC 22-1602                 |
|                                       | :   |                                              |
| DEPARTMENT OF HOMELAND SECURITY       | :   |                                              |
|                                       | :   |                                              |

**MEMORANDUM OPINION**

Plaintiff Mark Zaid filed three separate lawsuits, Civil
Action Nos. DKC 21-1130, 21-2625, and 22-1602, against various
government agencies seeking production of records under the
Freedom of Information Act ("FOIA").  The first two lawsuits
against the Department of Justice ("DOJ"), Civil Action Nos. DKC
21-1130 and DKC 21-2625, were consolidated by former Judge George
Hazel.[1]  (Civil Action No. 21-1139, ECF No. 15).  These two lawsuits
challenged the decision of the Federal Bureau of Investigations
("FBI") to withhold certain documents pertaining to the

---

[1] Those cases were transferred to the undersigned when Judge
Hazel resigned from the bench.

investigation and prosecution of Zackary Sanders.  The third case, Civil Action No. DKC 22-1602, was filed on June 29, 2022, against the Department of Homeland Security ("DHS") challenging the failure of the Immigration and Customs Enforcement ("ICE") and the U.S. Secret Service ("USSS") to provide any of the requested documentation to Plaintiff.  The third case also relates to the investigation and prosecution of Zackary Sanders.  Zackary Sanders was prosecuted and ultimately convicted for child pornography and related crimes.  The plaintiff in this case, Mark Zaid, is counsel to Zackary Sanders.  Because the substance of Plaintiff's complaints against the different government agencies requires a similar analysis under FOIA, the cases can be decided together.

Defendants have filed motions for summary judgment in each case.  For ease of reference, the papers in the DOJ case, Consolidated Civil Action No. DKC 21-1130, will be referred to as "DOJ" with the document number, and the DHS case, Civil Action No. DKC 22-1602, will be referred to as "DHS."  No hearing is necessary.  *See* Local R. 105.6.  For the following reasons, the DOJ motion will be GRANTED and the DHS motion will be GRANTED in part and DENIED in part.

I.    **Background**

  A.    **Plaintiff's Complaint against the DOJ**

On April 1, 2021, Plaintiff submitted a FOIA request to the FBI requesting records pertaining to fourteen items[2] associated with Zackary Sanders.  (DOJ, ECF No. 18-2, at 5-7).  The requests at issue are as follows:

> 1. Documentation or information received by the FBI from a foreign law enforcement agency ("FLA") on or about August 19, 2019, as publicly acknowledged on page 1 of the redacted Memorandum Opinion filed on October 29, 2020 ("Opinion"), that [Plaintiff] . . . attached as Exhibit "1" [to the eFOIA request];
>
> 2. Copies of the "two warrants" received from the FLA and publicly acknowledged on page 2 of the Opinion as being the source(s) for IP address data demonstrating that multiple IP address, including IP address 98.169.118.39 ("Target IP Address"), accessed online Child Sexual Abuse and Exploitation Material;
>
> 3. The administrative subpoena sent by the FBI on September 10, 2019, to Cox Communications relating to the Target IP Address, as publicly acknowledged on page 2 of the Opinion;
>
> 4. The report, dated January 17, 2020, drafted by Special Agent Christopher Ford ("SA Ford"), FBI's Washington Field Office's Child Exploitation and Human Trafficking Taskforce, to open an investigation into the Target IP Address, as publicly acknowledged on page 2 of the Opinion;
>
> 5. The search warrant SA Ford applied for on February 10, 2020, in which he stated a user

---

[2] Plaintiff is only litigating request numbers 1 through 10 and 13.  *See* (DOJ, ECF No. 16 ¶ 6).

of the Target IP Address accessed online child
sexual abuse and exploitation material via a
website separately identified by the FLA as
having an "explicit focus on facilitation of
sharing child abuse materials," as publicly
acknowledged on page 3 of the Opinion;

6. To the extent not encompassed by the scope
of line item #5, any records outlining
information relied upon in forming the basis
for SA Ford's findings and conclusions about
what the user of the Target IP Address had or
had not done at the Target Website, as
publicly acknowledged on pages 2 and 3 of the
Opinion;

7. To the extent not encompassed by line items
#1 and/or #2, any communication – including
verbal discussions memorialized in writing –
between the U.S. Government and the FLA
regarding the Target IP Address or the Target
Website, as publicly acknowledged on pages 1
through 3 of the Opinion;

8. To the extent not encompassed by any
previous line items, any records outlining the
U.S. Government's understanding prior to
August 19, 2019, of what was involved and
required to be done to de-anonymize the IP
Addresses of Internet users who visited the
Target Website, as publicly referenced on
pages 1 through 3 of the Opinion;

9. Any FBI affidavits, sworn declarations,
court filings or internal records (such as
electronic communications, Sentinel, etc),
that contain any one of the following
sentences, which are taken from the Opinion,
as specifically indicated in quotes:

    a. "an online bulletin board dedicated to
    the advertisement and distribution of
    child pornography that operated from
    approximately 2016 to June 2019";

    b. "associated to individuals who have
    accessed online Child Sexual Abuse and

Exploitation material," and also in the same document includes the term "FLA";

c. "A user of the Internet account at the SUBJECT PREMISES has been linked to an online community of individuals who regularly send and receive child pornography via a hidden service that operated on the Tor anonymity network.";

d. "a foreign law enforcement agency ('FLA') known to the FBI and with a history of providing reliable, accurate information in the past, notified the FBI" and also in the same document includes "accessed online child sexual abuse and exploitation material via a website";

e. "The FLA described the website as having explicit focus on the facilitation of sharing child abuse material (images, links and videos)";

f. "The FLA is a national law enforcement agency of a country with an established rule of law. There is a long history of U.S. law enforcement sharing criminal investigative information with the FLA and the FLA sharing criminal investigative information with U.S. law enforcement, across disciplines and including the investigation of crimes against children.";

g. "The FLA advised U.S. law enforcement that it obtained information through independent investigation that was lawfully authorized in the FLA's country pursuant to its national laws.";

h. "The FLA further advised U.S. law enforcement that the FLA had not interfered with, accessed, searched, or seized any data from any computer in the United States in order to obtain that IP address information. U.S. law

5

enforcement personnel did not participate in the investigative work through which the FLA identified the IP address information provided by the FLA."; or,

i. "18 (twinks) and younger".

10. Affidavits or sworn declarations filed in federal district court by SA Ford since May 2016. The search can be limited to prosecution cases under 18 U.S.C. §§ 2251, 2252 or 2253;

. . .

13. Any records identifying the identity of the "FLA" referred to in Exhibit "1"[.]

(*Id.*).

On various dates from April 2021 through May 2022, the FBI informed Plaintiff via letter that it had completed the search and reviewed records responsive to Plaintiff's request. The FBI either released responsive records in full, released records in part, or withheld records in full. The FBI found that the material that was withheld was: exempt from disclosure under 5 U.S.C. § 552(b); withheld under sealing orders from various district courts; or withheld under orders from the FBI in conjunction with Immigration and Customs Enforcement ("ICE") and the Executive Office for United States Attorneys ("EOUSA"). (DOJ, ECF No. 18-1, at 11–13). Plaintiff filed an appeal of the FBI's decisions and was notified that his appeal was closed due to his filing of the instant Complaint. (*Id.* at 11 n.8).

6

**B.    Plaintiff's Complaint against DHS**

On March 4, 2022, Plaintiff submitted a FOIA request to the DHS Privacy Office ("DHS Privacy").  (DHS, ECF No. 23-2 ¶ 6). Plaintiff's request sought multiple categories of information relating to the "Target IP Address" and "Target Website."  (*Id.*) Specifically, Plaintiff requested records pertaining to 5 items:[3]

> 1. Any communication – including verbal discussions memorialized in writing – between DHS and other U.S. Government agencies regarding the Target IP Address or the Target Website, as publicly acknowledged on pages 1 through 3 of the redacted Memorandum Opinion filed on October 29, 2020 ("Opinion"), that is attached as Exhibit "1";
>
> 2. Any communication – including verbal discussions memorialized in writing between DHS and the Federal Bureau of Investigation that was relied upon in forming the basis for Special Agent Christopher Ford's findings and conclusions about what the user of the Target IP Address had or had not done at the Target Website, as publicly referenced on pages 2 and 3 of the Opinion;
>
> 3. Any records outlining the U.S. Government's understanding prior to August 19, 2019, of what was involved and required to be done to de-anonymize the IP addresses of Internet users who visited the Target Website, as publicly referenced on pages 1 through 3 of the Opinion;
>
> 4. All records pertaining to the IP address 98.169.118.39 from May 22, 2019, to February 10, 2020;
>
> 5. Any records referencing "Hurtcore."

---

[3] These requests substantially overlap with the requests Plaintiff made to the DOJ.

(*Id.*).   On March 17, 2022, DHS Privacy sent Plaintiff a letter acknowledging receipt of his request and also notifying him that his request was too broad in scope or did not specifically identify the records he sought.  The letter asked Plaintiff to resubmit his request with more detail. (*Id.* ¶ 7).  Plaintiff emailed with DHS Privacy and identified ICE and USSS as the government components that could have records and requested that DHS refer his request to those entities. (*Id.* ¶¶ 8-9).  On April 29, 2022, DHS sent Plaintiff a letter informing him that his request had been transferred to ICE and USSS for processing and direct response, and DHS Privacy then closed the request. (*Id.* ¶ 10).  DHS Privacy received no appeal of this transfer from Plaintiff. (*Id.* ¶ 11).

On May 4, 2022, ICE acknowledged receipt of Plaintiff's request.  (DHS, ECF No. 23-1, at 5-6).   On May 13, 2022, ICE notified him that more details and clarification were needed regarding the scope of his request.  (DHS, ECF No. 26, at 4-5; DHS, ECF No. 23-1, at 8).   ICE informed Plaintiff that failure to respond in 30 days would result in his request being administratively closed.  (DHS, ECF No. 23-1, at 8).  On June 29, 2022, ICE notified Plaintiff that his request could not be processed as received and closed his request. (*Id.*; DHS, ECF No. 23-3, at 35).

On May 3, 2022, USSS acknowledged receipt of Plaintiff's FOIA request.  (DHS, ECF No. 23-1, at 8).  After a search for records pertaining to the request, on December 23, 2022, USSS notified him that no responsive records were located.  (*Id.* at 12).

## II.  Standard of Review

FOIA provides that, subject to certain exceptions, federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  "A request reasonably describes records if the agency is able to determine precisely what records are being requested."  *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted).[4]  The agency must make a "good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested."  *Manivannan v. Dep't of Energy,*

---

[4] The courts in the United States Court of Appeals for the District of Columbia Circuit handle a significant portion of FOIA litigation, and both the Fourth Circuit and this court regularly rely upon rulings from those courts in handling FOIA litigation cases.  *See Coleman v. Drug Enf't Admin.,* 714 F.3d 816, 820 (4th Cir. 2013); *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F.Supp.2d 859, 866 (E.D.Va. 2012), *aff'd*, 703 F.3d 724 (4th Cir. 2013); *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004); *Havemann v. Astrue*, No. 1:10-cv-01498, 2012 WL 4378143, at *4 (D.Md. Sept. 24, 2012) (all citing or quoting the D.C. Circuit in FOIA litigation cases).  This opinion, as well, will refer to those courts.

*Nat'l Energy Tech. Lab.*, 843 F.App'x 481, 483 (4th Cir. 2021) (internal quotation marks omitted).

FOIA claims are commonly resolved through motions for summary judgment. *See Wickwire Gavin P.C. v. U.S. Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004). Fed.R.Civ.P. 56 provides that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party in a FOIA case—here, the agencies—may make this showing using "reasonably detailed, nonconclusory affidavits and declarations submitted in good faith." *See Freeman v. U.S. Dep't of Just.*, 808 F.2d 834, 1986 WL 18310, at *2 (4th Cir. 1986) (unpublished table decision). Agency declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (*quoting Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Thus, the plaintiff's belief, without more, "that there are other documents he is entitled to . . . is inadequate to withstand a motion for summary judgment." *Heily v. U.S. Dep't of Commerce*, 69 F.App'x. 171, 174 (4th Cir. 2003). The plaintiff would need to "demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or

suggesting bad faith" in order to rebut the presumption of good faith. *Id.* at 173.

## III. Analysis

Defendants move for summary judgment, arguing that (1) Plaintiff has failed to exhaust administrative remedies with regard to the DHS/ICE request, (2) there is no material factual dispute regarding whether DHS/USSS conducted a reasonable search, and (3) there is no material factual dispute regarding whether the FBI conducted a reasonable search and properly asserted various FOIA exemptions.

In opposing both Defendants' motions for summary judgment, Plaintiff argues that (1) this action is not barred by the administrative exhaustion requirement and ICE should be required to conduct a search, (2) USSS' search under request number 5 was not reasonable, and (3) the DOJ has not met its FOIA obligations in invoking certain exemptions.

### A.    DHS Case

Plaintiff argues that DHS/ICE is not entitled to summary judgment because (1) there was no requirement that he pursue additional administrative remedies regarding the ICE portion of the request, and (2) ICE should be required to conduct a search because his request reasonably described the records requested. (DHS, ECF No. 26, at 9, 10).

    1.    **Administrative Exhaustion**[5]

In FOIA cases, "[t]he requirement that administrative remedies be exhausted saves both agency and judicial resources and affords the requester hope that a timely response to the request will be forthcoming." *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 823 (4th Cir. 2013).

> Congress recognized, however, that agencies may be prone to resist the release of records, either because they believe in good faith that production of the requested documents is not required or because they wish to spare themselves inconvenience or embarrassment. Without the prospect of judicial intervention, therefore, the right of citizens to examine the basic workings of their government would be severely compromised.

*Id.* If an agency denies a FOIA request, the requester "must ordinarily appeal the denial . . . within the administrative process before proceeding to federal court." *Id.* at 823; *see also* 28 C.F.R. § 16.8(a). However, "a requester will be deemed to have exhausted his or her administrative remedies 'if the agency fails to comply with the applicable time limit provisions' laid out in FOIA." *Coleman*, 714 F.3d at 823 (quoting 5 U.S.C. §

---

    [5]  The parties do not discuss the procedural framework for the exhaustion issue. Is it an affirmative defense that must be pled and proven by a defendant, or must a plaintiff plead and prove exhaustion? *See Carter v. United States*, 2017 WL 1044771 at *4 (S.D.Ohio March 20, 2017); *Stevens v. U.S. Dep't of Health and Human Servs.*, --- F.Supp.3d ---, 2023 WL 2711830, at *2-4 (N.D.Ill. March 30, 2023). Regardless, as will be discussed, Defendant DHS has not shown that it is entitled to summary judgment on this ground.

552(a)(6)(C)(i)).  This constructive exhaustion applies "unless the agency responds to the request *before suit is filed*." *Pollack v. Dep't of Just.*, 49 F.3d 115, 118 (4th Cir. 1995).

Here, Plaintiff submitted his FOIA request on March 4, 2022, and on April 29, 2022, DHS transferred his FOIA request to ICE. On May 4, 2022, ICE acknowledged receipt of the request, and on May 13, 2022, determined that the request was too broad to conduct a "thorough and adequate search."  It then requested clarification from Plaintiff and advised him that "if a response is not received within 30 days, [his] request will be administratively closed." (DHS, ECF No. 23-1, at 8).  Plaintiff did not respond to this request and filed suit on June 29, 2022, and ICE closed Plaintiff's FOIA request on that same date.  Under these circumstances, DHS has not shown that Plaintiff was required to exhaust any administrative remedies imposed by ICE.

The FOIA statute states that:

> [e]ach agency, upon any request for records . . . , shall (i) determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of— . . . in the case of an adverse determination— (aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination[.]

5 U.S.C. § 552(a)(6)(A)(i).

Here, ICE made its determination that it could not proceed with Plaintiff's request on May 13, 2022; it did not, however, notify him that this was an adverse determination and if so, of his right to appeal this determination. (*See* DHS, ECF No. 23-3). The 90-day period required by the statute had not yet passed at the time ICE closed Plaintiff's request on June 29, 2022. Accordingly, Defendant DHS has not shown that it would be proper to hold Plaintiff to any administrative exhaustion requirements he was not made aware of. *See e.g.*, *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 187 (D.C. Cir. 2013) (holding that administrative exhaustion did not apply because the agency did not make a determination within 20 days and did not notify Plaintiff of his appeal rights until 75 days after the FOIA request was made). Thus, summary judgment will not be granted in favor of DHS on this ground.

   **2.   ICE Search**

Defendant DHS maintains that ICE's assessment that Plaintiff's request was unreasonable was correct and that Plaintiff's failure to provide narrowing criteria should also be treated as a failure to exhaust. Plaintiff argues that DHS is not entitled to summary judgment because ICE should be required to conduct a search for records according to his request, which was reasonable. DHS argues that ICE properly determined that Plaintiff's request was overly broad and that it would be too

burdensome to conduct a search.  (DHS, ECF No. 26, at 10; DHS, ECF No. 23-1, at 17).

There are three factors to be considered when determining whether a FOIA request is proper:

> *First*, a request must "reasonably describe[ ]" the records sought.  *Id.* § 552(a)(3)(A).  If the agency reading a request "is able to determine precisely what records are being requested," that request meets the "reasonably describes" requirement. *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996).  *Second*, a record must be "readily reproducible" in the format requested.  5 U.S.C. § 552(a)(3)(B).  Related to the assumption that FOIA does not require creation of new records, a requester oversteps when it seeks information in a format that the agency does not use or for which the agency lacks the necessary technology. *See Aguiar v. DEA*, 992 F.3d 1108, 1113 (D.C. Cir. 2021).  And the agency need not take on new technological processes just to respond. *See Long v. ICE*, 149 F.Supp.3d 39, 56 (D.D.C. 2015).  *Third*, agencies need only make "reasonable efforts" to search for electronic records.  5 U.S.C. § 552(a)(3)(C).  A search that "would significantly interfere with the operation of the agency's automated information system[ ]" is per se unreasonable. *Id*.

*Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, No. 1:22-CV-00117 (TNM), 2022 WL 4289561, at *3 (D.D.C. Sept. 16, 2022).

Here, Plaintiff's requests 1-4 meet the "reasonably describes" requirement.  First, Plaintiff's request did not use such vague words and descriptions that would prevent ICE from determining what records were being requested.  The request

specifically requested communication between the government agencies that reference the Target IP Address or Target Website as mentioned in the memorandum opinion that he attached to his request, which was clearly related to the Zackary Sanders prosecution. Plaintiff also specifically pointed to pages of the opinion, provided a specific IP address, and a specific time period. Defendant DHS has not clearly shown that these requests were vague or overly burdensome, and ICE had sufficient information on which to determine "precisely which records [were] being requested." *Ctr. for Immigr. Stud.,* WL 4289561, at *3. *Cf. Williams v. U.S. Dep't of Just.*, No. 16-cv-512-PWG, 2016 WL 3027543, at *5 (D.Md. May 27, 2016) (determining that the agency could not determine precisely what records were being requested where the plaintiff requested records for over 600 years with no other identifying details or attempts to narrow the range); *Cable News Network v. Fed. Bureau of Investigations*, 271 F.Supp.3d 108, 112 (D.D.C. 2017) (determining that a request for records that "relate in any way" to memos issued by the FBI director was too vague). The agency is, thus, not entitled to summary judgment as to these requests.

On the other hand, Plaintiff's request number 5, seeking any records referencing "hurtcore,"[6] is overly broad as it provides no narrowing construction or other limitation and has the potential to be overly burdensome.  The request would require ICE to search every possible place where any reference to "hurtcore" could be found, even if it has no relation to Zackary Sanders or his criminal investigation, which is the background on which Plaintiff has brought his FOIA requests in the first instance.  *See Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (determining that a request was too broad and imposed an unreasonable burden on the agency as it "require[d] the agency to locate, review, redact, and arrange for inspection a vast quantity of material.").  Accordingly, this request is overbroad as framed, and the agency is entitled to summary judgment as to it.

### 3.  USSS Search

Plaintiff only contests the adequacy of the search conducted by USSS as it pertains to request number 5, arguing that USSS improperly limited the search to those records only pertaining to the criminal prosecution of Zackary Sanders.  (DHS, ECF No. 26, at

---

[6] "Hurtcore," according to the referenced opinion, with citation to the underlying affidavit, is "violent pornography." (DHS, ECF No. 23-4, at 18).

16). Request number 5 seeks "any records referencing 'hurtcore.'" (DHS, ECF No. 23, at 3).

In evaluating the adequacy of a search, "the relevant question is not whether every single potentially responsive document has been unearthed . . . but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." *Ethyl Corp. v. U.S. Env't Prot. Agency*, 25 F.3d 1241, 1246 (4th Cir. 1994) (internal citations omitted). "The requirement to 'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." § 552(a)(3)(D)." *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 359 (4th Cir. 2009). The agency must provide a declaration that is "reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Ethyl Corp.*, 25 F.3d at 1247; *see also Nicholas v. Nat'l Sec. Agency*, No. 05-cv-02800-WDQ, 2006 WL 4071922, at *1 (D.Md. May 11, 2006) ("An agency may rely on a reasonably detailed, nonconclusory, good faith affidavit to show the adequacy of its search.").

To demonstrate the adequacy of its search, DHS submits a declaration from Kevin L. Tyrrell, the USSS Supervisory FOIA Officer. (DHS, ECF No. 23-4). Specially as it relates to request

number 5, Mr. Tyrrell states that USSS searched the Field
Investigative Reporting System ("FIRS") to ascertain if there were
any responsive records. (*Id.* at 4). FIRS indexes existing cases
within USSS' jurisdiction, and it directs searchers to the system
or location where records related to an investigation are stored.
(*Id.*). USSS conducted searches using the terms "98.169.11.39" and
"hurtcore." (*Id.*). USSS also searched all available emails sent
or received by any secret service employee during the time period
between May 22, 2019 and February 10, 2020, to find records
responsive to request numbers 4 and 5. (*Id.* at 4-5). The agency
used this time period because it was the one specified in request
number 4. (*Id.* at 5). The hits generated based on the search
term "hurtcore" were reviewed and determined to be non-responsive.
(*Id.*).

Mr. Tyrrell states that after Plaintiff filed his lawsuit,
USSS undertook to get clarification as to what Plaintiff was
seeking regarding request number 5. Plaintiff informed the agency
that he was looking for all records that include the word
"hurtcore," and USSS determined that such a construction with no
limitation would be too burdensome and overly broad to conduct a
search to find records. USSS reviewed the opinion attached to
Plaintiff's FOIA request and found that "hurtcore" was referenced
substantively three times as it pertained to Mr. Sanders' defense
of his criminal prosecution, and they accordingly interpreted

request number 5 to be seeking records relating to that investigation and prosecution. (*Id.* at 6). USSS searched using additional terms such as "Zackary Ellis Sanders," "Zackary Sanders," and "Risa Sanders," which were names referenced in the opinion. (*Id.* at 7). The USSS reviewed all hits and determined that none of them directly or indirectly included responsive records. (*Id.*)

Plaintiff's argument that USSS improperly limited request number 5 is unpersuasive. As previously discussed, requiring an agency to do an "all encompassing" search for any records pertaining to a single word such as "hurtcore" would place too large a burden on the agency. Additionally, Plaintiff has brought these lawsuits in an attempt to obtain documents pertaining to the investigation and criminal prosecution of Zackary Sanders. This is not only evident in Plaintiff's own filings with this court and as outlined in the factual background, but also in that his FOIA request to DHS and subsequently USSS included the memorandum opinion from the Zackary Sanders criminal prosecution. Thus, the USSS has demonstrated that its actions were "reasonably calculated to uncover all relevant documents." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F.Supp.2d 859, 869 (E.D.Va. 2012), *aff'd*, 703 F.3d 724 (4th Cir. 2013), (quoting *Ethyl Corp.*, 25 F.3d at 1246). It conducted its search pertaining to request number 5 including various searches for the word "hurtcore," email searches, and

20

searches of FIRS, including searches of other names from the opinion Plaintiff attached to the request.  Furthermore, "it is not necessary that a search unveil every potentially responsive or relevant document."  *Nicholas*, 2006 WL 4071922, at *1. Accordingly, USSS' search was adequate, and DHS is entitled to summary judgment on this issue.

**B.   DOJ Case**

**1.   FBI Search**

Even though Plaintiff does not challenge the adequacy of the FBI search, describing the search informs the analysis of the challenged exemptions asserted by the agency.  To demonstrate the adequacy of its search, the DOJ submits a declaration from Michael Seidel, the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), of the FBI.  (DOJ, ECF No. 18-2).  Mr. Seidel states that, given that Plaintiff's requests sought investigative records referenced in a memorandum opinion in the criminal proceedings against Zackary Sanders, it would be reasonable to expect that responsive information would be indexed in Sentinel and in the Central Records System ("CRS").  (*Id.* ¶ 21).  The CRS is a system of records compiled and maintained by the FBI in the course of fulfilling its functions as a law enforcement and intelligence agency.  Sentinel is the FBI's case management system, and case records that are created in or uploaded to the CRS are managed via Sentinel.  The

21

FBI uses Sentinel to locate records for use in its daily agency functions. (*Id.* ¶¶ 21-25).

Mr. Seidel states that a search of the CRS and Sentinel is in most cases the most reasonable means for the FBI to locate records because they provide access to a "comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects." (*Id.* ¶ 27). In searching for documents responsive to Plaintiff's request, the FBI "conducted an index search of the CRS to identify main files subject to the FOIA and responsive to Plaintiff's request letter numbers 1-10 and 13." (*Id.* ¶ 29). It also conducted additional searches "[d]ue to the specific nature of numbers 9 and 10 of the request." (*Id.*). It construed Plaintiff's request broadly as seeking records pertaining to Mr. Sanders and those in which his name appears. The FBI used the search term "Zackary Sanders" and found one main file responsive to multiple of Plaintiff's requests. (*Id.* ¶¶ 29, 30).

Additionally, Mr. Seidel states that the FBI conducted a term search in the CRS using the sets of terms listed in request 9 of Plaintiff's FOIA request and found records responsive to Plaintiff's request. (*Id.* ¶ 31). The FBI determined that documents responsive to request number 10 were not likely to be located through an index search of the CRS and therefore requested the Special Agent ("SA") in the Criminal Investigative Division

("CID") assigned to Mr. Sanders' case to search for records responsive to request number 10.  (*Id.* ¶ 32).  The SA conducted a search in two email accounts and a search of Sentinel using the terms "declaration" "affidavit" "I, Christopher Ford" and "warrant," and 445 responsive pages were located.  (*Id.* ¶ 33).  After reviewing the results from all of the searches, the FBI determined there was no indication that responsive information resides anywhere else.  (*Id.* ¶ 34).

The declaration of the FBI is sufficient because it indicated where responsive documents were likely to be located and why and how the search was performed, provided the variety of search terms used, specifically used terms provided by the Plaintiff, and determined that responsive documents were not likely to be located elsewhere.  The FBI has shown that it made "a good faith effort to conduct a search . . . using methods reasonably expected to produce the information requested."  *Manivannan v. Dep't of Energy, Nat'l Energy Tech. Lab.*, 843 F.App'x 481, 483 (4th Cir. 2021).  There is no dispute that the FBI's search for responsive documents was adequate.

### 2.   FBI Exemptions

In enacting FOIA, Congress created "a policy of broad disclosure of Government documents in order to ensure an informed citizenry, vital to a functioning democratic society."  *Fed. Bureau of Investigations v. Abramson*, 456 U.S. 615, 621 (1982) (internal

quotation marks omitted).  However, Congress also recognized "that legitimate governmental and private interests could be harmed by release of certain types of information" and accordingly designated certain categories of information as exempt from FOIA's general disclosure mandate.  *Id.*  Subsection (b) of FOIA "creates nine exemptions from compelled disclosure.  These exemptions are . . . plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed."  *Bowers v. Dep't of Just.*, 930 F.2d 350, 356 (4th Cir. 1991) (quoting *Env't Prot. Agency v. Mink*, 410 U.S. 73, 79 (1973)).

District courts are often called upon to determine whether government records "were properly withheld under a FOIA exemption provision."  *Willard v. Internal Revenue Serv.*, 776 F.2d 100, 102 (4th Cir. 1985) (citing 5 U.S.C. § 552(a)(4)(B)).  A reviewing court directs its inquiry at the "information requested and the exemptions claimed."  *Bowers*, 930 F.2d at 357.  "The agency refusing to release the information bears the burden of proving that its actions were correct," and the exemptions "are narrowly construed in favor of disclosure."  *Willard*, 776 F.2d at 102.  The agency can satisfy this burden by "describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions."  *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004).

The reviewing court should give "substantial weight to the expertise of the agencies charged with determining what information the government may properly release." *Bowers*, 930 F.2d at 357. "If there is no reason to question the credibility of the experts and the plaintiff makes no showing in response to that of the government, a court should hesitate to substitute its judgment of the sensitivity of the information for that of the agency." *Id.* "The court is entitled to accept the credibility of the [agency's] affidavits, so long as it has no reason to question the good faith of the agency." *Id.; see also Havemann v. Astrue*, No. 10-cv-01498-ELH, 2012 WL 4378143, at *4 (D.Md. Sept. 24, 2012) ("No deference is owed to the agency's determination to withhold records[,] [but] affidavits submitted by an agency are entitled to 'a presumption of good faith.'"). Accordingly, summary judgment in favor of the government agency is appropriate where the agency's declarations "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Am. Mgmt. Servs.*, 842 F.Supp.2d at 866 (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

Plaintiff argues that the DOJ is not entitled to summary judgment because it has not met its FOIA obligations with respect

to the categorical invocation of FOIA exemption 7(A), and exemptions 5, 6, 7(C), and 7(D). (DOJ, ECF No. 20 at 7).[7]   To support its determination that documents were properly withheld under the applicable FOIA exemptions, Defendant DOJ submitted a *Vaughn* index, in addition to the declaration from Michael Seidel. (*See* DOJ, ECF No. 18-2).[8]  A *Vaughn* index is a list or chart that describes the documents an agency has withheld, named after the decision in which the use of such an index was first discussed. *See Rein*, 553 F.3d at 357 n.6 (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).  A *Vaughn* index "must include sufficiently detailed information to enable a court to rule on whether the document falls within the asserted FOIA exemption." *Id.*

    a.    **Exemption 7(A)**

FOIA exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with

---

[7] He does not challenge the appropriateness of redactions pursuant to exemptions 3 and 9(E).

[8] Defendant DOJ filed two additional declarations with its Reply. (DOJ, ECF Nos. 22-1, 22-2). Ordinarily, of course, a party should not be able to file additional factual support without giving the opposing party an opportunity to respond.  Plaintiff did not object or file a request to file a surreply, however, although he did file a notice of supplemental information.  The information in the supplemental declarations does not affect the outcome of this opinion.

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "Exemption 7(A) reflects the Congress' recognition that 'law enforcement agencies have legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it comes time to present their case.'" *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1096 (quoting *Nat'l Lab. Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). To satisfy its burden of proving that its invocation of this exemption was correct, an agency may "group[] documents in categories and offer[] generic reasons for withholding the documents in each category." *Id.* at 1098. If the agency adopts this approach, it must (1) "define its categories functionally, [(2)] conduct a document-by-document review in order to assign documents to the proper category, and [(3)] explain to the court how the release of each category would interfere with enforcement proceedings." *Id.* The enforcement proceedings must be "pending or reasonably anticipated" at the time of the court's decision, not only at the time of the initial FOIA request. *Id.* at 1096-97.

According to Mr. Seidel's declaration, the FBI located records responsive to Plaintiff's request numbers 1, 3-6, and 9–10 in a pending investigative file that it deemed to be exempt from disclosure under exemption 7(A). (DOJ, ECF No. 18-2 ¶¶ 43, 44). After Zackary Sanders was convicted of production, receipt,

and possession of child pornography, the FBI contacted the SA assigned to Mr. Sanders' criminal case to determine whether release of any information in the responsive file would cause harm to any pending enforcement proceeding. (*Id.* ¶ 47). The SA advised that the release of those records would reasonably be expected to interfere with ongoing proceedings in Mr. Sanders' criminal case because he has filed an appeal, seeking to have his conviction overturned and the case remanded for a new trial. (*Id.*) The SA also stated that the records were related to ongoing investigations of third-parties and that release of this information would interfere with those investigations. (*Id.*)

The FBI conducted a document-by-document review of the records within Mr. Sanders' investigative file to confirm the applicability of exemption 7(A). The FBI provides a list of the types of records located in the investigative file, along with a description of how they relate to the investigation or proceedings. That list includes: electronic communications; non-public court documents; envelopes; miscellaneous administrative documents; memoranda and correspondence; interview forms, handwritten notes, and recorded videos; computer analysis evidence response team notes, reports, logs, and other information; evidence logs; receipt of property forms; payment request forms; other investigatory documents; administrative subpoenas and subpoenaed information; FBI import forms; consent to search forms; consent to

assume online identity authorization forms; foreign, other federal, state, and/or local law enforcement documents; victim information reports; photographs; and operation plans. (DOJ, ECF No. 18-2 ¶ 49). The FBI found that release of responsive records in the Sanders investigative file would not only harm ongoing proceedings in Mr. Sanders' case, but it would also allow third-party individuals to know prematurely the details surrounding the investigation of their criminal activities—including evidence gathered during the investigation and the identity of victims—and they could use the information to destroy evidence, create false evidence, or intimidate victims, witnesses, or others. According to Mr. Seidel, the FBI determined that "release of information in the records would potentially harm the government's investigative and enforcement efforts, thus reducing the likelihood of prosecution of the investigative subjects for their crimes, which involve the exploitation of children." (*Id.* ¶ 51).

The FBI also reviewed, document by document, each record and assigned the responsive records to functional categories. (DOJ, ECF No. 18-2 ¶¶ 48, 53). Those functional categories are: (1) administrative material, with subcategories: reporting communications and administrative instructions; and (2) evidentiary and investigative material, with subcategories: information concerning physical and documentary evidence, and

records containing the exchange of information between law enforcement agencies.[9]

### i. Administrative Material

The FBI states that the "administrative instructions" subcategory includes case captions, serial numbers, identities of FBI field offices, dates of investigations, and detailed instructions designed to ensure that investigative procedures are conducted within guidelines. (DOJ, ECF No. 18-2, at 32). Administrative instructions relate to investigative procedures or strategies employed in an investigation. The "reporting communications" subcategory of documents permit the monitoring of investigations and have detailed information about victims, third parties, and their ties to the investigation. Release of this information may reveal government cooperation with other entities, the nature and scope of the investigation at issue, and various sources in the investigation, and would permit subjects to anticipate, alter, or negate evidence which would stymie enforcement efforts. (*Id.* at 33). The information in this

---

[9] In his response, Plaintiff only challenges the withholding of documents belonging to the two subcategories under evidentiary and investigative material. He agrees that the specific details provided for the administrative material and its subcategories are sufficient. Plaintiff also challenges the use of an "automated system" to conduct the document-by-document review. As noted by Defendant DOJ, the statute permits an automated review. 5 U.S.C. § 552 (a)(3)(D).

category is sufficient to show that release of this material would interfere with enforcement proceedings.

### ii.   **Evidentiary and Investigative Material**

The *Vaughn* index identifies records to which exemption 7(A) applies as documents relating to the opening of investigations, research on individuals being investigated, affidavits in support of search warrants, electronic communications pertaining to investigations, and more. (*See generally* DOJ, ECF No. 18-2, at 162-202). Mr. Seidel describes this category as consisting of evidence and communications discussing evidence, including physical and documentary evidence as well as records documenting the exchange of information between the FBI and other law enforcement agencies. (*Id.* at 33-34).

Physical and documentary evidence includes information or summaries of information obtained from law enforcement activities such as searches and seizures, surveillance, victim interviews, and more. According to Mr. Seidel's declaration, disclosure of this evidence would permit subjects to estimate the scope of an investigation and formulate strategies to contradict evidence or avoid detection by law enforcement. (*Id.* at 34). The FBI provides more information on records that fall into this subcategory, stating that one such record is an investigative interview form, "FD-302," which is an internal FBI form where an SA would document case-related information from an interview he or she conducted.

31

(DOJ, ECF No. 22-1 ¶ 8).   Information in this form may contain names of witnesses, victims, or third parties that is then used to support prosecution efforts.   Premature disclosure of this information could cause harm to such third parties and thwart future investigative efforts and prosecutions. (*Id.*)

Mr. Seidel states that the release of records containing the exchange of information between the FBI and other law enforcement agencies would reveal the FBI's investigative interest in particular individuals and other third parties, such as witnesses and victims, which could result in their harm.   Premature release of this information could also harm the FBI's relationship with these other agencies.   (*Id.*).   Records in this subcategory also relate to information exchanged between law enforcement agencies and the FBI that is used to corroborate evidence during investigations.   Premature disclosure of this material could prevent the continued sharing of information and diminish the scope or volume of reliable information available to the FBI. (DOJ, ECF No. 22-1 ¶¶ 9, 12).

The information provided for this category clearly demonstrates how its release would interfere with enforcement proceedings.   Plaintiff has not provided any evidence that contradicts the FBI's assessment of the records or of its bad faith in withholding them.   Thus, contrary to Plaintiff's unsupported lamentations, the descriptions in the *Vaughn* index and the Seidel

declaration are sufficient to show Defendant DOJ has properly invoked the categorical exemption of 7(A). Nonetheless, the court analyzes the other exemptions claimed by Defendant DOJ. They are also sufficient.

      **b.   Exemption 5**

      Plaintiff asserts that withholding was not proper under the deliberative process privilege or the attorney work product privilege. (DOJ, ECF No. 20, at 21-24). Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(a)(4)(B). "It encompasses . . . the deliberative process and attorney-client privileges." *Rein*, 553 F.3d at 365-66.

      The deliberative process privilege "is designed to protect the quality of administrative decision-making by ensuring that it is not done 'in a fishbowl.'" *City of Va. Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1252 (4th Cir. 1993). The privilege "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but for matters they considered before making up their minds." *Id.* at 1252-53. "Documents withheld or redacted pursuant to the deliberative process privilege must be both

'predecisional' and 'deliberative.'  The deliberative material reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Rein*, 553 F.3d at 372 (internal citations and quotations omitted).  "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"  *City of Va. Beach*, 995 F.2d at 1253.  Thus, the deliberative process exemption protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Rein*, 553 F.3d at 373.

To fall under the attorney work product protection, a document "must have been prepared by an attorney in contemplation of litigation which sets forth the attorney's theory of the case and his litigation strategy.  The exemption . . . provides a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) (internal citations omitted).  The protection includes factual information prepared by an attorney in anticipation of litigation.  *Id.* at 293.  Most circuits will apply the "because of" test, "asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the

Case 8:21-cv-01130-DKC   Document 25   Filed 07/05/23   Page 35 of 47


prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010).

The FBI asserts that it withheld information under the deliberative process privilege to protect "handwritten, investigative interview notes, and draft affidavits and draft pen register and trap and trace documents." (DOJ, ECF No. 18-2 ¶ 67; *see generally id.* at 162-202 (describing documents under this exception as draft affidavits)).  Handwritten interview notes precede the final write-up of an FBI investigative form, and these notes include thoughts that are not included in the final form. These notes generally include observations, facts, and impressions collected during an SA's interview with a subject.  Such notes were used in Mr. Sanders' criminal investigation, and different strategies may be reflected in those notes.  Draft affidavits and draft pen register and trap and trace documents contain information obtained and analyzed by SA's throughout the investigative process, including during interviews, surveillance, and evidence collection, and they predate official affidavits or pen register and trap and trace orders.  They reflect the thought processes and editing of the agency and include shared inter-agency drafts where release could harm future deliberations.  (*Id.* at ¶¶ 66-71).

Releasing these documents containing internal deliberations and investigative strategies could lead to the reasonably foreseeable harm of creating an unwillingness for SA's to document

interviews, and it could cause public confusion where draft information not included in final decisions would be released. (*Id.*).  Such non-final decisions or opinions and draft thoughts are exactly what the deliberative process privilege protects.  *See Elec. Frontier Found. V. Dep't of Just.*, 739 F.3d 1, 7–10 (D.C. Cir. 2014) (finding that an opinion that does not provide an authoritative statement of policy and merely examines policy options is not the "working law" and is the exact sort of "advisory opinion" that comprises a part of governmental decision making and policy formulation that is covered by the privilege. "The privilege calls for the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.").  Thus, this material was properly withheld under exemption 5.

The FBI withheld information under the attorney work product privilege to protect draft affidavits created by attorneys and used in support of an application for a search warrant that was intended for a criminal investigation of individuals involved in potential violations of federal crimes.  It is reasonably foreseeable that it would interfere with the government's ability properly to prepare its legal case theory and strategy.  (DOJ, ECF No. 18-2 ¶¶ 73, 74).  A draft affidavit used in preparing a request for a search warrant linked to a federal criminal investigation is quintessentially related to litigation and in anticipation of

36

trial.  *See Hanson*, 372 F.3d at 296 (finding a report protected under the work product doctrine because "it was prepared by a consultant attorney for a USAID financed project, it contains the attorney's analyses, opinions and recommendations and was prepared in anticipation of litigation.").  "Draft affidavits", whether prepared by an attorney or by an agent for the attorney, "are covered by the work-product rule." *Borda v. U.S. Dep't of Just.*, 306 F.Supp.3d 306, 320 (D.D.C. 2018).  This material was thus properly withheld under the attorney work product privilege and exemption 5.

### c.  Exemptions 6 and 7(C)

Defendant DOJ withheld names and other identifying information of individuals pursuant to these exemptions. Plaintiff only contests withholding under exemptions 6 and 7(C) as to FBI special agents, local law enforcement, and non-FBI personnel, specifically those "officials who held a GS-14 supervisory position or local equivalent." (DOJ, ECF No. 20, at 26).  "Exemption 6 permits a federal agency to withhold records where (i) the disputed records constitute 'personnel,' 'medical,' or 'similar files,' (ii) the disclosure of which would amount to a 'clearly unwarranted invasion of personal privacy.'" *Havemann*, 2012 WL 4378143, at *4 (citing 5 U.S.C. § 552(b)(6)).  "The purpose of this exemption is 'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of

personal information.'" *Id.* "Exemption 7(C), by its terms, permits an agency to withhold a document only when revelation could reasonably be expected to constitute an unwarranted invasion of personal privacy." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989). Under both exemptions, the court must balance the public interest against the privacy interest to be protected.

> First, an agency must articulate a non-speculative privacy interest in the requested records. Second, a court must verify the existence of a public interest in disclosure. The only relevant "public interest in disclosure" to be weighed . . . is the extent to which disclosure would serve the "core purpose of the FOIA," which is "contributing significantly to public understanding of the operations or activities of the government." Finally, a court must weigh the two interests, mindful that even a very slight privacy interest trumps an insubstantial public interest, and that a speculative privacy interest can never justify withholding, even in the absence of a powerful public interest.

*Havemann*, 2012 WL 4378143, at *5 (quotation amended). "There is a presumption of legitimacy accorded to the Government's official conduct," and "clear evidence is usually required to displace it." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (citing *Dep't of State v. Ray*, 502 U.S. 164, 178-79 (1991)). The privacy interests at issue in this case outweigh the public interest in disclosure.

The *Vaughn* index indicates that the documents withheld under these exemptions were related to a search and seizure warrant, investigative information, and information provided to the FBI. (*See generally* DOJ, ECF No. 18-2, at 162-202).   DOJ asserts that the FBI SAs and local law enforcement personnel have a significant privacy interest in not having their names and personal identifiable information released in connection with these investigations.   The FBI SAs and local law enforcement personnel performed tasks related to conducting, supervising, maintaining the investigation, and conducting administrative activities reflected in the records requested by Plaintiff.   Any publicity, adverse or otherwise, could lead to negative implications for those SAs and local law enforcement personnel based on their connection with any particular investigation.   Disclosing the identity of the SA or enforcement officer does not itself significantly increase the public's understanding of FBI operations and activities. (DOJ, ECF No. 18-2 ¶¶ 81, 82, 85).

The rationale is similar for non-FBI personnel and federal government agencies.   These personnel or agencies assisted the FBI in its investigation of Zackary Sanders, and revealing their names could cause others to target them, question them, or seek revenge for being involved in those activities.   (*Id.* ¶ 87).   The potential harm caused by revealing names or other personal identifying information outweighs any public interest here, particularly where

such a revelation would not shed much light on the FBI's operations or activities.

Although Plaintiff narrowed his challenge to supervisory employees, the FBI has stated that the employees with GS-14 or GS-15 rank within the records at issue were not in public-facing positions, and their private information was likewise not disclosed. (DOJ, ECF No. 22-1 ¶ 20). Protecting the names and other personal information here outweighs the public interest where Plaintiff has offered no explanation as to how these names would reveal information about the FBI's activities. *See Jud. Watch, Inc. v. United States*, 84 F.App'x 335, 338-39 (4th Cir. 2004) (extending Supreme Court precedent that disclosure of employee addresses constitutes a "clearly unwarranted" invasion of privacy to the disclosure of individual names, explaining that "[t]he privacy interest protected by Exemption 6 encompasses the right of employees not to be "disturbed at home by work-related matters . . . [even if] that information may be available to the public in some form"); *see id.* at 339 (noting that the plaintiff had "offered no explanation as to how the names of lower-level I.R.S employees would reveal information about the government's operations" and that "the public interest in the names of government employees alone 'would appear to be negligible' absent a 'compelling allegation of agency corruption or illegality.'").

Thus, the FBI's withholdings under Exemptions 6 and 7(C) were justified.

### d.  Exemption 7(D)

This exemption relates to the identity of, or information provided by, a confidential source.  Plaintiff argues that the FBI improperly withheld documents under exemption 7(D) because it failed to clarify whether each individual or source spoke with an understanding that the communications would remain confidential. (DOJ, ECF No. 20, at 27).  Exemption 7(D)

> permits the Government to withhold records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

*Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993) (citing 5 U.S.C. § 552(b)(7)(D)).  The question under 7(D) is whether the source "spoke with an understanding that the communication would remain confidential." *Id.*

The FBI states that it relied on evidence that "certain individuals, who provided specific and detailed information . . . either requested that their identity not be revealed or FBI

41

investigators would have, by standard practice, expressly promised them that their identity and the information provided (outside of its investigative use) would remain confidential." (DOJ, ECF No. 18-2 ¶ 92).  The designation of these witnesses as cooperating witnesses ("CW") or confidential human sources ("CHS") would indicate an express assurance of confidentiality.  For certain individuals, the record also included the words "protect identity." (*Id.*).  As it pertains to foreign entities, the FBI states that it withheld information that was provided under an express assurance of confidentiality under long-standing confidentiality agreements, and it must abide by those requests and agreements. (*Id.* ¶ 97; DOJ, ECF No. 22-1).

Because of Defendant DOJ's use of the term "certain individuals," with no direct reference to documents and information in this case, it is not entirely clear how the individuals designated as "CW," "CHS," and "protect identity" are related to this FOIA request.  Similarly, it was not explicitly stated how the "longstanding agreements" with foreign entities applies to the requests or information requested in this case. Nonetheless, in reviewing Defendant DOJ's *Vaughn* index, every time an exemption under 7(D) was asserted, at least one, if not multiple, other exemptions under FOIA were likewise asserted. Specifically, when exemption 7(D) was asserted, one or more of exemptions 6, 7(C), or 7(A) was also asserted, which are also

valid.   Furthermore, without any evidence of bad faith, the court is entitled to presume good faith on behalf of the FBI.  *See Bowers*, 930 F.2d at 357 ("[T]he court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.").   Thus, the exemption claimed is sufficiently supported to justify granting summary judgment under FOIA.

### 3.   IRS, ICE, and EOUSA Exemptions

Plaintiff asserts that the declarations provided by the IRS, ICE, and EOUSA all failed to provide sufficiently detailed information to meet their burdens.  (DOJ, ECF No. 20, at 20 n.9). The IRS asserts exemption 3, ICE asserts exemptions 6, 7(C),[10] and 7(E), and EOUSA asserts exemptions 5[11] and 7(E).

FOIA Exemption 3 protects from disclosure "information that is 'specifically exempted from disclosure by [a] statute' '(i) requir[ing] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[ing] particular criteria for withholding or refer[ring] to particular types of matters to be withheld.'"  *Solers, Inc. v.*

---

[10] ICE properly invoked exemptions 6 and 7(C), (*see* DOJ, ECF No. 18-2, at 207, ¶¶ 10-13), for the same reasons the FBI properly withheld information under those exemptions.

[11] The EOUSA also properly invoked exemption 5, (DOJ, ECF No. 18-2, at 217-18, ¶¶ 9-13), under the same rationale the court used to find appropriate the FBI's withholding under exemption 5.

*IRS*, 827 F.3d 323, 331 (4th Cir. 2016) (citing 5 U.S.C. §
552(b)(3)).  The IRS relies on 26 U.S.C. § 6103(a) which provides
that tax returns and return information shall remain confidential
except as authorized by Title 26.  This statute is contemplated by
exemption 3.  *Solers*, 827 F.3d at 331.  The IRS used this statute
in conjunction with exemption 3 to withhold information that
consists of tax return information of those other than the
Plaintiff, such as names, SSN or EIN, and discussions of liability.
(DOJ, ECF No. 18-2, at 205, ¶¶ 6-8).  This information was properly
withheld.  *See Solers*, 827 F.3d at 331 (withholding was proper
where individual identities on documents requested could be
discerned).

FOIA Exemption 7(E) protects from disclosure information
which "would disclose techniques and procedures for law
enforcement investigations or prosecutions or would disclose
guidelines for law enforcement investigations or prosecutions if
such disclosure could reasonably be expected to risk circumvention
of the law."  5 U.S.C. § 552(b)(7)(E).  ICE applied this exemption
to protect investigation techniques unique to ICE, specifically
those performed by a task force officer in Homeland Security that
led to a search and seizure warrant.  (DOJ, ECF No. 18-2, at 212,
¶ 17).  EOUSA applied this exemption to protect techniques and
methodologies used to investigate child pornography and
exploitation crimes that are not known to the public, release of

44

which could teach individuals how to evade detection.  (DOJ, ECF No. 18-2, at 219, ¶¶ 16, 17).  *See Viola v. U.S. Dep't of Just.*, 306 F.Supp.3d 321, 332-33 (D.D.C. 2018) (finding exemption 7(E) properly asserted to withhold records containing information of monitoring devices, undercover operations, and internal FBI information).  As such, both agencies properly asserted exemption 7(E) to protect information that would disclose techniques for investigation that could permit circumvention of the law.

### 4.  Segregability Review

Finally, Plaintiff argues that Defendant DOJ has not presented credible evidence that segregable portions of the records have been released.  (DOJ, ECF No. 20, at 28).  FOIA provides that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under the subsection setting forth the exemption." *Stolt-Nielsen Transp. Group LTD. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (citing 5 U.S.C. § 552(b)).  The focus of FOIA is "information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Id.* at 734.  It is quite possible that "part of a document should be kept secret while part should be disclosed." *Id.*

The FBI has met its burden to show that it properly considered segregability.  Specifically, the FBI has categorized documents by

pages they have released in full ("RIF"), released in part ("RIP"), and withheld in full ("WIF").  The FBI goes on to give specific information pertaining to each category and its reasoning for its findings.  (*See* DOJ, ECF No. 18-2, at 73-74).  Furthermore, in multiple places throughout the FBI's declaration, it has clarified the segregability standard and specified how that standard was implemented.  (*See id.* ¶ 50 ("When a request is received for records related to an ongoing FBI investigation or for which enforcement proceedings are pending, the FBI . . . segregates and releases information related to the investigation where release would not jeopardize the investigation or enforcement proceeding, such as public source information."); *id.* ¶ 46 ("The FBI will release any record or information therein that can be segregated and released without triggering a 7(A) harm[.]"); *id.* ¶ 67 ("[T]he FBI endeavored to segregate non-deliberative facts, whenever possible, and only withheld such material pursuant to Exemption 5 in conjunction with the deliberative process privilege when it found it was inextricably intertwined with agency deliberations.").  The FBI has shown that it properly performed a segregability analysis.

**IV.   Conclusion**

     For the foregoing reasons, Defendant DHS' Motion for Summary Judgment is DENIED in part and GRANTED in part.  Defendant DOJ's Motion for Summary Judgment is GRANTED.  A separate Order follows.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
